**NATIONAL LABOR RELATIONS BOARD, Appellee,**

v.

**JOSEPH MAGNIN COMPANY, Appellant.**

No. 82–7165.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1982.

Decided May 3, 1983.

Jerrold J. Wohlgemuth, Washington, D.C., for N.L.R.B.

Kathleen M. Kelly, Littler, Mendelson, Fastiff & Tichy, Roland C. Davis, Davis, Cowell & Rowe, San Francisco, Cal., for Joseph Magnin Co.

Before WALLACE and FERGUSON, Circuit Judges, and GRANT,* District Judge.

* Hon. Robert A. Grant, Senior United States District Judge, Northern District of Indiana, sitting by designation.

FERGUSON, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order finding the Joseph Magnin Company in violation of sections 8(a)(3) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), and ordering that affected employees be made whole. We enforce the Board's order.

FACTS

Joseph Magnin Company, Inc. operates retail stores in California and other western states. It currently has seven locations within San Francisco, including its O'Farrell Street store (Store No. 1). Prior to 1977 the company had voluntarily extended recognition to Department Store Employees Local 1100 and extended the collective bargaining agreement to each of its newly opened stores in San Francisco. However, its locations outside the city remained unorganized. In 1977 Magnin opened the Embarcadero store in San Francisco without extending recognition.

The company has a policy, which first appeared in written form in 1977, of not transferring hourly employees between locations, with exceptions only for employee relocations or promotions. When the Embarcadero store opened, the company refused to transfer employees from organized locations but did allow some transfers from unorganized locations, claiming that each transfer fell within an exception to its policy. The union filed unfair labor practice charges at that time, which were dismissed for lack of evidence of unlawful motivation. The union later won a representation election at the Embarcadero store.

For some time before 1978, Joseph Magnin had operated a Gucci department in Store No. 1 which was devoted exclusively to the products of that designer. In 1978 Magnin entered into an agreement with Gucci to open several separate Gucci shops, one of which was to be on Post Street in San Francisco. The company did not inform its employees of its plans to open the new Gucci shop; rather, it took affirmative steps to conceal its plans from them. After the plans became public, those employees who asked about transfers were told that none would be permitted, and one who attempted to apply was told it would be futile. Employees were told, however, they could resign, thereby losing their accumulated seniority, and then apply for jobs at the new store.

An employee at Store No. 1 filed a grievance in September, 1978. The union requested arbitration and when the company withdrew its participation, procured a state court order to arbitrate. The arbitrator issued an award finding that the company had discriminated against union employees at Store No. 1 on account of their union affiliation, in violation of the collective bargaining agreement, and recommended that employees in the Gucci department at Store No. 1 be allowed to transfer to the new Gucci shop on Post Street.

Meanwhile, the union filed unfair labor practice charges with the NLRB in 1979 and a hearing was held before an administrative law judge (ALJ). The Board, adopting the findings of the ALJ, found that the company had violated sections 8(a)(3) and (1) by refusing to transfer employees from organized San Francisco locations to the new Gucci shop in order to prevent the union from gaining majority status at the new location. It ordered the company to make whole through transfer "any employees found to have been discriminated against because of union membership either by being denied transfer opportunities or by being discouraged from applying for transfer." 257 N.L.R.B. 656, 658 (1982). Additionally, the Board found that the company's actions had made it impossible to determine whether the union would have represented a majority of the Gucci shop employees at its opening absent the company's unfair labor practices. It therefore found a bargaining order inappropriate, but did order that backpay be computed as if the collective bargaining agreement had been in effect. *Id.* The Board then applied for enforcement, and the company cross-appealed both the determination of violation and the remedy ordered.

## ANALYSIS

### I. Unfair Labor Practice.

Section 8(a)(3) of the Act prohibits an employer from discriminating in its treatment of employees in order to discourage union membership. Section 8(a)(1) prohibits employer interference with employees' rights to organize and bargain collectively; a violation of 8(a)(1) may be predicated on an 8(a)(3) violation.[1] The Board's determination that Joseph Magnin refused to transfer organized employees in order to avoid organization of its Gucci shop must be upheld if supported by substantial evidence on the record as a whole. *NLRB v. Brooks Camera, Inc.,* 691 F.2d 912, 915 (9th Cir. 1982); *NLRB v. Anchorage Times Publishing Co.,* 637 F.2d 1359, 1363 (9th Cir.), *cert. denied,* 454 U.S. 835, 102 S.Ct. 137, 70 L.Ed.2d 115 (1981).

 Our review of the record convinces us that the Board's determination is well supported. Although the Board considered evidence concerning prior events surrounding the opening of the Embarcadero store as "background," the evidence of a violation drawn solely from the company's actions concerning the Gucci shop opening is "reasonably substantial in its own right." *NLRB v. MacMillan Ring-Free Oil Co.,* 394 F.2d 26, 33 (9th Cir.) *cert. denied,* 393 U.S. 914, 89 S.Ct. 237, 21 L.Ed.2d 199 (1968). While events occurring more than six months before filing may not be used as the basis of a charge, 29 U.S.C. § 160(b), under the circumstances the Board was entitled to consider the Embarcadero store evidence to "shed light on the true character of matters occurring within the limitations period." *Local Lodge No. 1424, I.A.M. v. NLRB,* 362 U.S. 411, 416, 80 S.Ct. 822, 826, 4 L.Ed.2d 832 (1960); *NLRB v. MacMillan Ring-Free Oil Co.,* 394 F.2d at 33.

The Board determined that Joseph Magnin's refusal to transfer employees to the Gucci shop was based on its desire to avoid unionization of that shop rather than on any neutral policy. In analyzing motivation, the Board must rely on circumstantial as well as direct evidence, and "is to be accorded special deference in drawing derivative inferences from the evidence." *NLRB v. Tischler,* 615 F.2d 509, 511 (9th Cir.1980). The Board had before it ample evidence of the company's desire to open the Gucci shop non-union. Additionally, the ALJ specifically found that the company refused to consider transferring employees from Store No. 1 even when such transfers would have fallen within the company's stated exceptions to its policy. The Board's inference of unlawful motivation is thus reasonable and must be accepted. *NLRB v. Miller Redwood Co.,* 407 F.2d 1366, 1369 (9th Cir.1969).

### II. Deferral to Arbitration.

 Joseph Magnin contends that the Board erred in refusing to defer to the arbitrator's award, which found that the company had discriminated against union members, but failed to make any backpay award. The Board has wide discretion in determining whether or not to defer to an arbitrator's award, and only abuses that discretion if "it fails to follow its own deferral standards or if the standards themselves are invalid." *Ad Art, Inc. v. NLRB,* 645 F.2d 669, 675 (9th Cir.1980). In *Spielberg Mfg. Co.,* 112 N.L.R.B. 1080 (1955), the Board announced that it would defer to an arbitration proceeding if (1) the proceedings appear to have been fair and regular; (2) all parties agree to be bound; and (3) the arbitrator's decision is not repugnant to the purpose and policies of the Act. These criteria were approved by the Supreme Court in *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). The Board will, however, refuse to defer "unless the unfair labor practice issue

---

1. The relevant sections provide:
 (a) It shall be an unfair labor practice for an employer—
 (1) to interfere with, restrain, or coerce employees in the exercise of [organization] rights . . . .
 (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.
29 U.S.C. § 158(a)(1), (3).

before the Board was both presented to and considered by the arbitrator." *Suburban Motor Freight, Inc.,* 247 N.L.R.B. No. 2 (1980), *quoted in Ad Art, Inc. v. NLRB,* 645 F.2d at 676.

■ We note in passing that at the administrative hearing, the company argued that the ALJ should *not* defer to the award. We need not address the significance, if any, of the company's change in position, however, since under the law of this circuit, the Board was entitled to refuse to defer under the third prong of the *Spielberg* test, as glossed by *Suburban Motor Freight.*

The Board found this case inappropriate for deferral based on the ALJ's determination that the arbitrator was not presented with sufficient evidence by the parties and was therefore unable to make findings of fact crucial to shaping the necessary remedy with regard to backpay. This circuit has stated that "[t]he Board has wide discretion to apply its *Spielberg* criteria," *NLRB v. Max Factor & Co.,* 640 F.2d 197, 204 (9th Cir.1980), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 840 (1981), and in fact has questioned the authority of a reviewing court to interpret those criteria differently from the Board. *Id.* at 204 n. 7. Thus, the Board is not required to defer to an arbitral award where the arbitrator's inability to make a determination on appropriate relief, in the Board's sound discretion, renders the award repugnant to the purpose and policies of the Act.[2]

## III. Make-whole Remedy.

■ Section 10(c) of the Act empowers the Board, upon finding that an unfair labor practice has been committed, to order

the violator to cease and desist and "to take such affirmative action . . . as will effectuate the policies of [the] Act." 29 U.S.C. 160(c). Under this section, "[t]he Board has broad discretion in fashioning remedies to effectuate the policies of the Act in light of the circumstances of each case." *Industrial, Technical & Professional Employees Division, National Maritime Union v. NLRB,* 683 F.2d 305, 308 (9th Cir.1982); *see also Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 188, 194, 61 S.Ct. 845, 849, 852, 85 L.Ed. 1271 (1941). Its remedy may not be disturbed "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Virginia Electric & Power Co. v. NLRB,* 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943).

### A. The Transfer Order.

■ The Board ordered that the Company, *inter alia:*

(b) Immediately transfer to its Gucci store at 253 Post Street, San Francisco, California, any employees found to have been discriminated against because of union membership either by being denied transfer opportunities or by being discouraged from applying for transfer, discharging if necessary any employees now filling the positions to which the discriminatees are to be transferred . . . .

The literal terms of the order thus appear to give transfer rights to those employees who were discouraged from applying for transfers but who would not have been granted transfer even absent any company misconduct. However, the order must be

---

**2.** We note that the Board did not alter the arbitrator's finding as to the violation, but simply supplemented the remedial portion of the award based on the complete record developed before it. The dissent admits that the Board's analysis in this regard "may be a plausible interpretation of the third prong of *Spielberg,*" but objects to the lack of explanation contained in the Board's order. It appears to us, however, that where the Board incorporates an ALJ's specific finding that the arbitrator was unable to make the findings necessary to provide a proper remedy, its refusal to defer to the

arbitrator's limitation of remedy must logically be based on the Board's longstanding policy of ordering complete relief for proven violations, and the necessary corollary of that policy, that incomplete relief is repugnant to the purposes and policies of the Act. "A fuller statement by the Board of its reasons for this conclusion would, as [the dissent] states, have been helpful. We cannot say, however, that its refusal to defer on the ground of repugnance to the Act was, on the record before the ALJ, an abuse of discretion." *NLRB v. Max Factor,* 640 F.2d at 202 (citations omitted).

read in light of the fact that the determination of which employees must be transferred has been deferred until later compliance hearings. At those hearings the company must have the opportunity to show that it would have refused to transfer a particular employee in the absence of unlawful motivation. This approach is consistent with that taken in *Wright Line, A Division of Wright Line, Inc.,* 251 N.L.R.B. 1083 (1980), enf'd, 662 F.2d 899 (1st Cir.1981).

If, during the compliance hearings, it appears that there are an insufficient number of appropriate positions at the Gucci shop for potential transferees, a method of prioritizing may be adopted by negotiation of the parties or determination of the Board. As this circuit stated when faced with a similar question:

> "General orders of this sort entered by the Board with respect to back pay and reinstatement manifestly contemplate further administrative action on its part, i.e. determination of the exact amount of back pay to be tendered and *determination as to what positions are available and substantially equivalent* for the purposes of the reinstatement ordered. Such general orders are analogous to interlocutory judgments of courts fixing liability but leaving for future determination questions as to amount of liability; and our decrees affirming or enforcing them are analogous to our affirmance of interlocutory judgments on appeal. After the general order of the Board for back pay and reinstatement is affirmed or ordered enforced by us, the Board must work out the details of reinstatement and of the amounts to be paid as back pay under the general provisions of the order. This can ordinarily be done by negotiation; but, if controversy arises, the facts must be found by the Board, the body to which Congress has committed the administrative process."

*NLRB v. Local 776, IATSE (Film Editors),* 303 F.2d 513, 521 (9th Cir.1962), *quoting Home Beneficial Life Ins. Co. v. NLRB,* 172 F.2d 62, 63 (4th Cir.1949) (emphasis added). See also *NLRB v. Deena Artware Inc.,* 361 U.S. 398, 412, 80 S.Ct. 441, 448, 4 L.Ed.2d 400 (1960) (Frankfurter, J., concurring); *Great Chinese American Sewing Co. v. NLRB,* 578 F.2d 251, 255–56 (9th Cir.1978).

**B. Backpay Computations.**

The Board found that the company's unlawful use of its no-transfer policy so discouraged employees from requesting transfer that the Board was unable to determine whether the union would have had majority status upon the opening of the Gucci shop in the absence of discrimination. It therefore found a bargaining order to be inappropriate. However, "solely for the purpose of remedying a past course of unlawful conduct," and relying on the general principle that uncertainties created by the wrongdoer's conduct should be resolved against the wrongdoer, the Board ordered that backpay should be computed as if the collective bargaining agreement had been in effect regarding wages and benefits.

We find nothing punitive in the remedy so ordered. The Board expressly declined to order the company to apply the contract prospectively or to bargain with the union unless an actual majority was established, thus avoiding the risk of imposing an involuntary bargaining relationship on the parties.

In *Leeds & Northrup Co. v. NLRB,* 391 F.2d 874 (3rd Cir.1968), the Third Circuit enforced the Board's order requiring the company to grant backpay to union employees based on a prior compensation formula where the company had unilaterally altered the formula in violation of its duty to bargain. It was impossible to ascertain whether, had the union and the company bargained over the issue, the old formula would have been maintained. Nevertheless, the court found the award supported by the possibility that "the union might have successfully resisted all or a portion of the reduction ... and the employees should not be left in a worse position than they might have enjoyed if the union had been given the opportunity to bargain." 391 F.2d at 880. The court recognized that "a retroactive order might afford the employees a better position than the union's bar-

gaining might have achieved," *id.,* but concluded that the Board did not exceed its authority by resolving the doubt against the party who violated the Act.

Although *Leeds* preceded the adoption of the *Wright Line* mode of analysis, it is not inconsistent with it. Once the *prima facie* showing is made under *Wright Line,* the employer has the burden of establishing that its action would have been the same absent discrimination. Although for purposes of an 8(a)(5) violation, the burden is on the union to establish that it did have a majority (unless the employer's actions made an uncoerced choice impossible), for the purpose of remedying an 8(a)(3) violation, it is not inappropriate to hold the employer responsible when it fails to establish that the union would not have had a majority.

CONCLUSION

The Board's determination that Joseph Magnin violated section 8(a)(3) and (1) of the Act by refusing to transfer employees in order to avoid unionization of its Gucci shop is supported by substantial evidence on the record as a whole. The Board did not abuse its discretion in refusing to defer to the arbitrator's award under the facts of this case. We also find that the remedy ordered by the Board fairly effectuates the policies of the Act. For these reasons, we enforce the order of the Board.

WALLACE, Circuit Judge, concurring in part and dissenting in part:

I concur in part I of the majority opinion, which enforces the Board's decision on the section 8(a)(1) and section 8(a)(3) charges, and in part IIIA, which upholds the Board's transfer remedy. I dissent from part II of the majority opinion, which upholds the Board's refusal to defer to the arbitrator's denial of backpay to the seven union employees. As a result, I find it unnecessary to reach the merits of the backpay issue, which are discussed in part IIIB.

Although the Board is granted wide discretion in its decision whether to defer to an arbitration award, *see Alfred M. Lewis,*

*Inc. v. NLRB,* 587 F.2d 403, 407 (9th Cir. 1978); *Hawaiian Hauling Service, Ltd. v. NLRB,* 545 F.2d 674, 676 (9th Cir.1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977) (*Hawaiian Hauling*), it abuses that discretion "if it fails to follow its own deferral standards or if the standards themselves are invalid." *Ad Art, Inc. v. NLRB,* 645 F.2d 669, 675 (9th Cir.1980) (*Ad Art*); *NLRB v. Max Factor & Co.,* 640 F.2d 197, 201 (9th Cir.1980), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 840 (1981) (*Max Factor*); *Hawaiian Hauling, supra,* 545 F.2d at 676. The Board may change its mind or alter its standards without necessarily engaging in abuse of discretion. *Id.* at 676 & n. 6; *accord Ad Art, supra,* 645 F.2d at 675 n. 2. Nevertheless, the Board is "required to explain departures from [its] policies or rules so that a reviewing court is able to determine if [it] was acting in a reasoned, deliberate manner." *NLRB v. Cofer,* 637 F.2d 1309, 1312 (9th Cir.1981) (discussing Board's self-imposed jurisdictional limitations), *quoting Bob's Big Boy Family Restaurants v. NLRB,* 625 F.2d 850, 852 (9th Cir.1980) (discussing Board's self-imposed contract-bar rule). In short, the Board must either follow its own rules or explain why those rules should be disregarded in any particular case. *Id.* at 853.

The arbitrator here found that the company had discriminated against union members, but he refused to award backpay. He specifically found that, on the average, employees at the old O'Farrell store earned more in commissions than did employees at the new Post store. Thus, the seven employees suffered no damages from Magnin's discriminatory refusal to transfer them, and a backpay award was unwarranted. The union responded that the employees would have earned higher commissions had the collective bargaining agreement been in effect at the Post store, and that the figures should be adjusted to reflect the difference. The arbitrator rejected this contention and stated: "No evidence is provided or suggested, however, that would enable such an adjustment to be made. Accordingly, this requested relief is denied."

The Board refused to defer to the arbitrator's decision, stating that the arbitrator "was not presented with sufficient evidence by the parties and therefore was unable to make findings of fact crucial to shaping the necessary remedy with regard to backpay for the employees denied transfers by Respondent." *Joseph Magnin Co.*, 257 N.L.R.B. 656, 656 n. 1 (1981). The question is whether this proffered reasoning is encompassed by any of the Board's deferral standards, or if the Board has explained its departure from its previously announced rules.

The only case the Board cites in its order for refusing to defer, *Triple A Machine Shop, Inc.*, 245 N.L.R.B. 136 (1979) (*Triple A*), is not on point. There, the Board found that the arbitrator had not considered statutory issues that were before him, had failed to make necessary credibility and factual findings, and had issued "compromise" awards. *Id.* at 137. As the dissent in *Triple A* pointed out, the majority imputed bad faith to the arbitrator and suggested that he had attempted to avoid further proceedings. *Id.* at 138 (Member Penello, dissenting).

The arbitrator's behavior in our case cannot be so characterized. He considered all the issues before him and rejected the union's request for backpay, not on legal grounds, but only because the union had not substantiated its claims. The record clearly indicates that had the union proven its damages, backpay would have been granted. Thus, this is not a case in which the arbitrator refused to pass on a statutory issue, *see Stephenson v. NLRB*, 550 F.2d 535, 537 (9th Cir.1977) (*Stephenson*); *Greif Brothers Corp.*, 238 N.L.R.B. 240, 243 (1978), *vacated on other grounds*, 635 F.2d 531 (6th Cir. 1980), rejected Board precedent, *see Stephenson, supra*, 550 F.2d at 537; *Alfred M. Lewis, Inc. v. NLRB, supra*, 587 F.2d at 407–08, or ordered reinstatement without backpay in an attempt to effectuate a compromise award, *see Cessna Aircraft Co.*, 220 N.L.R.B. 873, 874–75 (1975).[1]

The Board's decision also contradicts the policy behind its deferral standards, which is to favor voluntary settlement of labor disputes through arbitration. *Ad Art, supra*, 645 F.2d at 674; *Max Factor, supra*, 640 F.2d at 201; *Spielberg Manufacturing Co.*, 112 N.L.R.B. 1080, 1082 (1955). In effect, it places the burden on the arbitrator to develop the necessary evidence to substantiate positions taken by the parties. This contradicts the general rule that the burden of production of evidence in arbitration proceedings is on the party that makes an allegation. *See* F. Elkouri & E. Elkouri, *How Arbitration Works* 279 (3d ed. 1973). Such a holding undermines the finality and integrity of arbitration decisions and thus can only discourage parties from settling their disputes through the arbitration process.

I do not interpret *Triple A* as shifting the burden of production of evidence from the charging party to the arbitrator; nor has the Board cited any case endorsing such a shift. Thus, the Board has failed in its order either to follow its own standards or to explain its departure from those standards.[2]

In its brief filed in our court, the Board shifts ground and asserts the third prong of *Spielberg* as its reason for refusing to defer. It contends that the arbitrator's decision was repugnant to the purpose and policies of the Act because he failed to provide a make-whole remedy. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 186–87, 94 S.Ct. 414, 426, 38 L.Ed.2d 388 (1973); *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 187–89, 61 S.Ct. 845, 849–50, 85 L.Ed. 1271 (1941). The Board apparently seeks to distinguish the arbitrator's remedial authority from his authority to decide statutory allegations. Although its reasoning is not fully developed, the Board implies that once an arbitrator has found a statutory violation,

---

1. Nor is *Suburban Motor Freight, Inc.*, 247 N.L.R.B. 146 (1980), which is cited by the majority, on point. The backpay issue here was both presented to and considered by the arbitrator.

2. The union does not allege that it was unable to secure information because it was within the control of the employer or otherwise unattainable.

the Board will review his proposed remedy de novo to determine if it fully compensates the aggrieved party, regardless of whether the arbitrator has diligently performed his task or whether the charging party has failed to substantiate its claim for relief during the arbitration process. The majority opinion appears to rely more on the Board's argument in its brief than on the rationale provided in the order.

The Board's analysis may be a plausible interpretation of the third prong of *Spielberg,* or provide sufficient explanation for the Board's departure from its traditional standards in this case. Unfortunately, this reasoning, which is barely touched upon in its brief, is not contained at all in the Board's published order. *See* 257 N.L.R.B. at 656 n. 1. It is axiomatic that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Securities & Exchange Commission v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); *FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 249–50, 92 S.Ct. 898, 907–08, 31 L.Ed.2d 170 (1972); *Bob's Big Boy Family Restaurants v. NLRB, supra,* 625 F.2d at 854 (We are not permitted to "substitute a different rationale for the rationale provided by the Board.").

Because the Board fails, in its order, to follow its own deferral standards or to explain its departure from those standards in this case, I dissent from part II of the majority's opinion and therefore would not reach the question discussed in part IIIB.