**ST. LUKE'S MEMORIAL HOSPITAL, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Arthur Burdick and Ellen Kovac, Party Respondents.**

No. 79–1300.

United States Court of Appeals, Seventh Circuit.

Heard Jan. 11, 1980.

Decided May 21, 1980.*

Opinion Released June 23, 1980.

---

* This appeal was originally decided by unreported order on May 21, 1980. See Circuit Rule 35.

The Court has subsequently decided to issue the decision as an opinion.

Fredric H. Fischer, Chicago, Ill., for petitioner.

Edward Dorsey, N. L. R. B., Washington, D. C., Arthur Heitzer, Milwaukee, Wis., for respondent.

Before SWYGERT, CUMMINGS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

Petitioner St. Luke's Memorial Hospital, Inc. of Racine, Wisconsin, has petitioned us to set aside a March 5, 1979, order of the National Labor Relations Board and deny its enforcement. The Board has cross-applied, seeking enforcement in full of that order. The petitions stem from unfair labor practice charges filed September 20, 1976, by employees Arthur Burdick and Ellen Kovac, claiming that the employer Hospital discharged them for union activity, assertedly in violation of Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (29 U.S.C. §§ 158(a)(1) and 158(a)(3)).[1]

---

1. Section 8(a)(1) makes it an unfair labor practice for an employer to interfere with employ- ees in the exercise of their Section 7 rights, and Section 8(a)(3) makes it an unfair labor prac-

Pursuant to *Dubo Manufacturing Corp.*, 142 NLRB 431 (1963), enforced, 353 F.2d 157 (6th Cir. 1965), the Regional Director of the Board deferred processing of the charges pending arbitration. After a three-day hearing in Racine, the arbitrator issued an award in April 1977, holding that these employees and two others, Barbara DeRosier and Beverly Smith, were discharged for just cause.[2]

Notwithstanding the arbitrator's decision, in July 1977 the Regional Director issued a complaint with respect to Burdick's charge while at the same time refusing to do so upon Kovac's claim. When Kovac appealed the Regional Director's refusal to issue a complaint on her behalf, the Regional Director withdrew his dismissal of the charge and on October 12, 1977, issued a consolidated complaint involving both employees. An Administrative Law Judge thereafter held seven days of hearings in Racine in November 1977, concluding that it was inappropriate to defer to the arbitration award in the Hospital's favor and that the Hospital had indeed violated Sections 8(a)(1) and 8(a)(3) of the Act since it provided only "disingenious [sic] and false reasons for the discharges of two union stewards [Burdick and Kovac] who visibly and aggressively pursued union activities * * *" (App. 28). The Board subsequently adopted the ALJ's decision and issued the proposed order without change. Because we agree with the Board's decision, the order will be enforced.

*Factual Background*

The events at issue here arose shortly after the collective bargaining agreement between the Union[3] and Hospital expired on April 30, 1976. The parties had begun to meet occasionally in negotiating sessions, but a strike was looming. Employee Burdick, a maintenance electrician at the Hospital and since January 1976 chief steward of the Union, served as a member of the

Union's negotiating team and was an advocate of a strong stand against the Hospital. The Union itself regarded him as a dissident who "fought too aggressively for contract terms more favorable to the employees" (App. 11). Burdick in fact once sued the Union to restrain it from negotiating a contract with the Hospital.

On May 7, the Hospital began holding departmental meetings, ostensibly to inform the employees of the status of Union-Hospital negotiations. Believing that the employees were upset by these meetings, Union negotiator Jay Schwartz asked Burdick to notify all employees of a 2:30 p. m. meeting to hear Schwartz warn against an immediate strike, which would have violated the ten days' notice requirement of Section 8(g) of the Act (29 U.S.C. § 158(g)). At about the same time, Burdick's supervisor, Pat Letizia, chief engineer at the Hospital, told Burdick to attend a meeting in Letizia's department, but Burdick responded that he could not attend because of the conflicting Union business. Burdick then notified other employees of the Union meeting and attended part of the 15–30 minute meeting that followed instead of the departmental meeting called by Letizia.

At the conclusion of the departmental meeting, Letizia and plant operations administrator Roselli approached Burdick and told him he was fired, which apparently provoked an outburst on Burdick's part. Schwartz and his assistant James Ennis thereafter approached Roselli and Letizia and, following further discussion, exacted assurances from Roselli that Burdick had in fact not been discharged, although he would be docked for the remainder of May 7 and for the time he was absent from work on that day. The ALJ "discredited" testimony of Hospital witnesses that they stated at the meeting that an investigation into Burdick's conduct would continue. He found

---

tice for an employer to discriminate in regard to tenure of employment to discourage union membership.

**2.** Employees DeRosier and Smith have not questioned the adverse award of the arbitrator.

**3.** Local 150, Service and Hospital Employees International Union, AFL–CIO, represents 250 non-technical and non-professional Hospital employees, including Burdick and Kovac.

rather that the hospital personnel specifically informed Ennis that no further sanctions against Burdick would follow. Burdick returned to work the next working day and worked for two weeks without further incident until the Union commenced a strike on May 24.

Burdick was active in picketing the Hospital at various times during the strike. According to the Hospital, Burdick engaged in several acts of misconduct, including a May 25 assault on James Hooton, a delivery driver for a bakery, and at another point stopping a semi-trailer truck and threatening its driver. The ALJ, however, credited testimony by both Burdick and Hooton indicating that Burdick did not commit the assault and also believed Burdick's testimony that he only requested that the semi-trailer driver honor the picket line. Burdick did not appear in any of the photographs the Hospital took to document picket line misconduct nor was he ever cited for contempt of a May 28 state court injunction the Hospital obtained to prohibit misconduct during picketing. On June 29, five days after the strike ended, the Hospital wrote Burdick that because of his instigation of and participation in the May 7 "illegal work stoppage" and his picket line misconduct, his employment was terminated.

Ellen Kovac, who was also a Union steward, worked with four other employees in the Central Service Department of the Hospital. That department is responsible for sterilizing hospital equipment and distributing it where needed throughout the facility. On May 22, one of the Hospital's three steam sterilizers was out of order and a second broke down during the morning operations. When the third steam sterilizer began to malfunction in the early afternoon, head supervisor Schroeder read a statement to the department employees implying that they were to blame for the breakdown and threatening to discharge those responsible. The Hospital maintains that Kovac then ordered the other employees not to work. But according to the ALJ, Versie Walker was the employee who suggested to the other four employees on the shift that they not touch any equipment so that they could not be accused of sabotage. This action forced nurses in the Hospital to visit the Central Service Department to obtain necessary equipment.

Kovac subsequently called chief steward Burdick at home, seeking assistance. Since it was Saturday, Burdick was unable at first to gain entry to the Hospital. In the meantime Rex Brown, an administrative assistant at the Hospital, arrived and told the five employees to return to work, but Kovac responded that she wanted to meet with Burdick because they had been accused of sabotage. Even though this first shift was to terminate at 3:00 p. m., Kovac's group did not leave their work station until 3:30 when they met with Burdick in a conference room. Burdick requested a copy of the warning that Schroeder had given to the five employees but was unsuccessful in obtaining it. Burdick and the five Central Service employees then left the Hospital. Later the department supervisor called the five employees to inform them that they were suspended for two days without pay because of the incident. They were scheduled to return to work on May 24, but the strike intervened.

The Hospital contends that Kovac also engaged in misconduct during the May 24 to June 24 picketing. The ALJ's decision, on the other hand, describes the Hospital's contentions as "vastly exaggerated." Thus the ALJ found that Evelyn Miller, an elderly woman the Hospital said had been harassed by Kovac and ultimately injured as a result of her conduct, had in fact tripped on a defective sidewalk near the Hospital and had been neither threatened nor injured by Kovac. The ALJ also absolved Kovac from culpability for a June 5 incident during which Union attorney Schwartz persuaded a man and his injured son not to enter the Hospital's emergency room but to go instead to another nearby hospital. In addition, the ALJ stated that although Kovac lent enthusiasm and loud support to the strike, she did not, as the Hospital alleged, use her bicycle to prevent vehicles or persons from reaching the Hospital. Like Burdick, Kovac did not appear in any of the

films taken by the Hospital to record picket line misconduct and was not cited for contempt of the May 28 injunction. Nevertheless, on June 29, the Hospital discharged her for the May 22 "work stoppage" and her participation "in picket line misconduct."

*Arbitrator's Decision and Board Action*

As noted, the resulting unfair labor practice charges filed by Burdick and Kovac were deferred pending the outcome of arbitration. On April 25, 1977, the arbitrator handed down a 16-page award upholding the discharge of Burdick, Kovac, DeRosier and Smith. The arbitrator stated that the Hospital had cause to discharge Burdick for leading the unauthorized 30-minute walkout on May 7. He concluded that the Hospital had not lost its right to discharge Burdick for his May 7 actions because its denial of wages for the remainder of that work day was not a final decision on discipline. The arbitrator did not consider Burdick's picketing conduct in upholding his discharge.

The arbitrator determined that Kovac was also discharged for just cause since she was the leader of the work stoppage in the sterilizer department on May 22. He held that the two-day suspension she received for her activities on May 22 was merely a preliminary action and did not prevent the Hospital from discharging her on June 29. As in the case of Burdick, the arbitrator did not decide whether Kovac had engaged in any picket line misconduct.

When the Regional Director thereafter decided to pursue the unfair labor practice charges, the Hospital argued that under *Spielberg Mfg. Co.,* 112 NLRB 1080 (1955), the Board should defer to the arbitration award. The ALJ concluded, however, that the Labor Board need not defer to the award because it did not meet three of the four criteria established in *Spielberg* and related cases for determining when deferral is appropriate. First, the ALJ stated that the proceeding may not have been fair and

regular because Burdick, Kovac and their attorneys did not participate in the selection of the arbitrator who was selected by the Hospital and the Union president. The latter was known to be at odds with both employees. Although the ALJ was satisfied that free and deliberate participation by Burdick and Kovac in the arbitration process met the second *Spielberg* criterion, he found that the arbitrator's award failed the third and fourth requirements in that (1) the award was repugnant to the purposes and policies of the National Labor Relations Act and (2) the alleged unfair labor practices were not at issue before the arbitrator who was concerned solely with whether just cause existed for the discharges as required by the collective bargaining agreement.

Turning to the evidence, the ALJ concluded that the Hospital's actions violated Sections 8(a)(1) and 8(a)(3) of the Act (note 1 *supra*) because the credible evidence along with the Hospital's disingenuous explanations of the discharges supported an inference that its motives were discriminatory. He thus decided that the Hospital should reinstate Burdick and Kovac with back pay. In addition, his proposed order contained such standard remedies as posting notices and ceasing and desisting from discouraging Union membership or interfering with employees in the exercise of their rights guaranteed by Section 7 of the Act (29 U.S.C. § 157). That order was subsequently adopted *in toto* by a three-member panel of the Board which affirmed the ALJ's decision in every respect.[4]

*The Labor Board's Jurisdiction Over Kovac's Discharge*

■ The Hospital's threshold argument is that the Board had no jurisdiction to issue a complaint based on Kovac's charge. The basis of this argument is the Hospital's contention that Kovac's appeal of the Regional Director's decision not to issue a complaint based on her charge was untime-

---

4. In affirming the ALJ's decision not to defer to the arbitration award, the Board found it unnecessary to consider whether the arbitration procedures were fair given the arbitrator's fail-

ure to consider whether the real reason for the discharges was the employees' protected activities (App. 6, n. 1).

ly by two days, thereby failing to preserve her claim, and that even if her appeal were timely, the Regional Director lacked authority to reopen the charge while her appeal was pending. Section 102.19(a) of the Board's Rules and Regulations (Series 8 as amended) provides that "[c]onsideration of an appeal untimely filed is within the discretion of the general counsel upon good cause shown" (29 C.F.R. § 102.19(a)). Kovac's lawyer had given the General Counsel sufficient reasons for his inability to comply with the normal time for filing an appeal (App. 50–51, 53–54) and the Board thus did not abuse its discretion in excusing the *de minimis* tardiness involved.

■ At the same time, the Regional Director was empowered during the pendency of Kovac's appeal to reverse his original dismissal of the Kovac charge. Such action is consistent with Board practice. *Central Enterprises, Inc.*, 239 NLRB No. 188 (1979); *Russell Coal & Clay Co.*, 165 NLRB 978 (1967). Since Kovac's appeal remained alive, the Hospital remained on notice that a charge might still be brought contesting her discharge. Without a showing of prejudice, the Hospital's complaint that the Regional Director reversed himself rather than await the outcome of Kovac's appeal is simply nugatory.

*Deference to the Arbitration Award Was Not Required*

■ That Congress has not required the Board to defer to arbitration awards is evident from Section 10(a) of the Act, which provides that the Board's power to prevent unfair labor practices "shall not be affected by any other means of adjustment * * * established by agreement, law, or otherwise * * *" (29 U.S.C. § 160(a)). Therefore, as the Supreme Court has stated, "the Board may proscribe conduct which is an unfair labor practice even though it is * * * remediable as such by arbitration * * *." *National Labor Relations Board v. Strong*, 393 U.S. 357, 361, 89 S.Ct. 541, 544, 21 L.Ed.2d 546. The Board has thus determined that it should defer to an arbitration award only if, *inter alia*, the arbitra-

tor has clearly decided the unfair labor practice issues and the result of the award is not repugnant to the policies of the Act. See *Spielberg Mfg. Co.*, 112 NLRB 1080 (1955); *Max Factor & Co.*, 239 NLRB No. 99 n. 3 (1978). This Court and others have generally approved these standards. See *Dreis & Krump Mfg. Co. v. National Labor Relations Board*, 544 F.2d 320, 330 (7th Cir. 1976); *National Labor Relations Board v. Owners Maintenance Corp.*, 581 F.2d 44, 48 (2d Cir. 1978); *Stephenson v. National Labor Relations Board*, 550 F.2d 535, 537–538 (9th Cir. 1977); *Banyard v. National Labor Relations Board*, 505 F.2d 342, 346, 347 (D.C.Cir.1974).

These principles do not mean that the Board is free to flout its own procedures should an arbitration award meet prevailing criteria. But the ALJ found that the arbitration award here failed the *Spielberg* test in three respects. First, a dubious process of selecting the arbitrator had been employed. Second, the arbitrator failed to discuss thoroughly the issue whether the Hospital had condoned the misconduct of Burdick on May 7 and of Kovac on May 22. The Hospital's *ex post facto* inferences from the arbitrator's decision are insufficient to demonstrate that he appreciated the full reach of the Board's condonation doctrine and applied it properly in this case. Thus the arbitrator's award is arguably repugnant to the purposes and policies of the Act, which does not favor the reconsideration of past wrongs.

Finally, the Board was correct in concluding that the arbitrator's finding that there was just cause for the discharges did not clearly decide the unfair labor practice charges, a third *Spielberg* requirement. To be sure, the Hospital correctly asserts that the Board has at times acknowledged that a finding of just cause is sufficient to dispose of any claim of discriminatory motive. *Electronic Reproduction Serv. Corp.*, 213 NLRB 758 (1974). But not only has the Board itself recently abandoned that rule (*Suburban Motor Freight, Inc.*, 247 NLRB No. 2, January 8, 1980), it properly declined to follow that approach in this case. As noted, the arbitrator failed to consider the

issue of the employees' picket line activities, which the Hospital expressly included among its reasons for the discharges. If these activities were protected, as the ALJ found, the Hospital could not rely on them. As we have noted elsewhere, even if the Hospital might have had just cause to discharge these employees because of their pre-strike activities, "the presence of valid grounds for an employee's discharge does not legalize a dismissal which was nevertheless due to a desire to discourage union activity" (*Chicago Magnesium Castings Co. v. National Labor Relations Board*, 612 F.2d 1028, 1033–1034 (7th Cir. 1980), quoting *Borek Motor Sales, Inc. v. National Labor Relations Board*, 425 F.2d 677, 680 (7th Cir. 1970) certiorari denied, 400 U.S. 823, 91 S.Ct. 45, 27 L.Ed.2d 52), so that a discharge in fact motivated by the employees' protected picket line activities would in any event have violated the Act. These failings in the arbitration award preclude any deference to it by the Board.

### The Condonation Doctrine Was Properly Applied

The Board found that the Hospital had forgiven any wrongdoing in Burdick's behavior on May 7 and in Kovac's behavior on May 22 since the Hospital promptly imposed sanctions on those employees at the time and indicated that no more discipline would be imposed for those episodes. The record amply supported a finding of condonation so that the Hospital clearly violated the Act by including the May 7 and May 22 incidents among its reasons for discharging these two employees on June 29.

■ The Hospital asserts that the record lacks any affirmative evidence to support a finding of condonation. In Burdick's case, however, there was conflicting testimony regarding what was said by the various parties and the ALJ was entitled to weigh the credibility of the witnesses. He found that the Hospital specifically informed the Union that no further discipline would be imposed on Burdick for his activities that day. Such a statement demonstrates the Hospital's condonation and pre-

cludes any reliance by the Hospital on Burdick's May 7 conduct in later discharging him. See *Jones & McKnight, Inc. v. National Labor Relations Board*, 445 F.2d 97, 103, 104 (7th Cir. 1971). Although the Hospital did not make such a statement in Kovac's case, its other actions provide sufficient basis for the ALJ's finding. Thus the Hospital specifically informed Kovac that she was being given a two-day suspension without pay and then scheduled her to return to work. She was prevented from doing so only by the May 24 strike. The Hospital never warned her that the May 22 incident was still under investigation and carried her name without comment on its employee roster during the strike. Such actions are sufficient to show condonation.

■ The public policy embodied in Section 8(g) of the Act (29 U.S.C. § 158(g))[5] does not, as the Hospital argues, preclude a finding of condonation for these activities. The actions of these individuals on May 7 and 22 respectively neither involve the type of massive union activity contemplated by Section 8(g) nor implicate the concerns about endangering the health of patients Congress intended to voice thereby. *Kapiolani Hospital v. National Labor Relations Board*, 581 F.2d 230, 233–234 (9th Cir. 1978). Furthermore, the infelicity in the timing of the May 7 meeting derived from the very principles of Section 8(g) since it was called to ensure that the employees would not strike before the Union had given the requisite ten-day notice. The failure of one shift of the Central Services employees to work for an hour on May 22 stemmed from their justifiable fear that they might be further accused of sabotage. Given such reasons, the Board was entitled to find that the Hospital had condoned Burdick's and Kovac's participation in the incidents of May 7 and May 22.

### Substantial Evidence Supports the Board's Findings That Burdick's and Kovac's Discharges Were Discriminatory

■ The Hospital's discharges of employees Burdick and Kovac violated Section

---

5. Section 8(g) requires a labor organization to give ten days' notice to a health care institution

"before engaging in any strike, picketing, or other concerted refusal to work * * *."

8(a)(1) and 8(a)(3) of the Act if the discharges were based in significant part on their union and other protected activities. *National Labor Relations Board v. Gogin*, 575 F.2d 596, 601 (7th Cir. 1978); *National Labor Relations Board v. Fairview Hospital*, 443 F.2d 1217, 1219 (7th Cir. 1971). As noted, the ALJ found that both discharges were motivated by discriminatory reasons and amounted to unfair labor practices in violation of Sections 8(a)(1) and 8(a)(3). Substantial evidence supports these findings.

Burdick and Kovac both favored an aggressive union position before and during the month-long strike. Their attitudes were well known to the Hospital. Burdick had filed 100 grievances in his first four months as chief steward and was a militant member of the Union negotiating committee. He was opposed to shortening the strike and wanted a more favorable collective bargaining contract than the one being negotiated by the Union president and the Hospital. Kovac was also a union steward. She was ubiquitous on the picket line, appearing even when not specifically scheduled for picket duty and constantly shouting slogans and encouraging the other picketers. Indeed she was one of the most zealous supporters of the picketing activities. Such activities of both employees were protected under the Act [6] and indeed the Hospital does not claim otherwise.

The discharge of these employees on June 29, just four days after the settlement of the strike in which they were so active, gives rise to an inference that the Hospital discharged them for discriminatory reasons. In response, the Hospital notes "illegal work stoppage" and "picket line misconduct" reasons stated in the discharge letters sent to Kovac and Burdick, and maintains that the employees were discharged on valid grounds unrelated to their protected activities. Based on the credited testimony, however, the ALJ absolved both employees of any of the misconduct asserted in those letters. As noted above, his finding that the Hospital condoned the employees' pre-strike activities precludes any reliance upon them in the discharges, and the other evidence indicated that neither employee had engaged in significant picket line misconduct. Nor do these conclusions rest, as the Hospital contends, on credibility determinations reflecting a disregard for the evidence in the record. The ALJ was entitled to credit generally the testimony of the employee witnesses if he found their account of the Hospital's motives more believable than that proffered in defense. *Chicago Magnesium Castings Co., supra*, at 1032. Substantial evidence thus supports the ALJ's conclusion that the Hospital's explanations were pretextual and that the Hospital's actual motives were discriminatory. As a result, his determination as adopted by the Board that the Hospital engaged in unfair labor practices proscribed by Sections 8(a)(1) and 8(a)(3) must be sustained.

The Labor Board's decision is affirmed and enforcement of its order is granted.

---

6. *National Labor Relations Board v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 346, 58 S.Ct. 904, 911, 82 L.Ed. 1381; *National Labor Relations Board v. Thor Power Tool Co.*, 351 F.2d 584, 585–586 (7th Cir. 1965); *Cameron Iron Works, Inc. v. National Labor Relations Board*, 464 F.2d 609, 610 (5th Cir. 1972).